THE STATE OF OHIO, APPELLEE, *v.* COMBS, APPELLANT.

[Cite as *State v. Combs* (1991), 62 Ohio St.3d 278.]

(No. 90–1868—Submitted September 11, 1991—Decided December 18, 1991.)

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *Christian J. Schaefer,* for appellee.

*H. Fred Hoefle* and *Chuck R. Stidham,* for appellant.

MOYER, C.J. We have reviewed Combs' fifteen propositions of law, independently assessed the evidence relating to the death sentences, balanced the aggravating circumstance in each count against the mitigating factors, and compared the sentence to those imposed in similar cases. As a result, we affirm the convictions and two death sentences.

## I

### *Pretrial Statement about Lawyer*

In his first proposition of law, Combs argues that the admission of his statement to Ventre, "talk to * * * [my] lawyer," was constitutional error. When that statement was admitted, the trial court instructed the jury that the defendant had a right not to speak to the police and that it not draw any inference against Combs because he exercised his rights. However, the judge also advised the jury, "You may consider this evidence, however, as it relates to the elements of purpose and prior calculation and design but what weight

you give to this testimony depends upon your findings and the weight that you attribute to this testimony * * *."

Combs argues egregious error because the court allowed the jury to use his exercise of a constitutional right to consult an attorney to support proof of essential elements of the crimes charged against him.

Since Combs objected neither to the evidence nor to the trial judge's *sua sponte* instruction, the issue must be analyzed on the basis of plain error. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Wade* (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244.

Courts disapprove of penalties imposed for exercising the right to remain silent and to consult an attorney. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, prohibits comments by prosecutors seeking to premise guilt findings on a defendant's failure to testify. *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, condemned the use of post-arrest silence to impeach a defendant's trial testimony. *Wainwright v. Greenfield* (1986), 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623, and *State v. Rogers* (1987), 32 Ohio St.3d 70, 512 N.E.2d 581, reversed convictions when defendants' pretrial exercise of rights of silence and to consult attorneys was used to refute insanity pleas.

The state argues that this principle only applies when *Miranda* warnings promise no adverse consequences from silence, and here no *Miranda* warnings were given. See *Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86; *Fletcher v. Weir* (1982), 455 U.S. 603, 606, 102 S.Ct. 1309, 1311–1312, 71 L.Ed.2d 490, 494.

However, at the point when Combs was placed in the ambulance, we find that Combs was in custody and had a right to remain silent, consult a lawyer, and receive a *Miranda* warning. When he arrived at the scene, Officer Ventre personally took the shotgun from Combs; there were two women dead from shotgun blasts in the adjacent car; and Ventre had been at the scene for some ten to fifteen minutes. Ventre's questioning, without a *Miranda* warning, violated those rights. Using Combs' comment, "talk to * * * [my] lawyer," in evidence at trial also violated his rights as viewed by *Griffin v. California, supra.*

Additionally, the "talk to my lawyer" evidence does not relate to or tend to prove prior calculation and design or purposefulness. Combs' comment simply meant that he was exercising his right to counsel and nothing more. Even if this remark was initially admissible, Evid.R. 401 and 403 would otherwise invite exclusion from evidence. No justification is apparent for the instruction that the evidence related to either purposefulness or prior calculation and design. Thus, we conclude the trial court erred in allowing this

remark into evidence and in instructing the jury to consider the remark in relation to purposefulness and prior calculation and design.

Nonetheless, neither the evidence nor the instruction constituted plain error. The evidence did not cause a miscarriage of justice, and neither the evidence nor the instruction produced a different result in the case. Since Combs' remark does not tend to prove either prior calculation and design or purposefulness, the jury could not have relied upon it to make those findings.

Other compelling evidence established purposefulness and prior calculation and design. Combs spent a considerable part of the afternoon of the murders searching for a shotgun. He asked two people for a shotgun, and eventually drove over eighty miles before returning to Cincinnati with a shotgun. The evidence indicates he stole the shotgun he used. After he drove back to Cincinnati, he confronted Joan and Peggy and initiated a car chase over several blocks, eventually cornering them at the Holiday Park Tower office building. He deliberately knocked out a window in their car and fired a shotgun into each woman's head at close range. Those facts alone establish both purposefulness and prior calculation and design. Thus, Combs has not shown plain error.

## II

### *Prosecutorial Misconduct—Sentencing*

In his second proposition of law, Combs argues that the prosecutor's sentencing argument improperly focused on the victims' mental anguish and suffering, thereby converting the facts of the offense into a nonstatutory aggravating circumstance. Combs contends the prosecutor also improperly focused on the suffering of the victims' family.

Combs did not object at trial, and "[a] claim of error in a criminal case can not be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial." *State v. Wade, supra,* 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, paragraph one of the syllabus. Accord *Scott v. State* (1923), 107 Ohio St. 475, 141 N.E. 19, at paragraph two of the syllabus; Crim.R. 52(B).

In his remarks, the prosecutor speculated at length about what Joan and Peggy thought as Combs confronted them, chased them in his car, and shot them. The following illustrates:

" * * * Can you imagine the terror of that? A gun right to your head, was she [Joan] thinking of her husband, who was going to take care of him? Was she thinking about her childhood? Was she thinking about her daughter take

me but spare Peggy? That's the aggravating circumstance, what she went through. Or maybe she started to pray, we don't know. He won't tell us. * * * What went through her [Peggy's] mind, what was she thinking? Was she thinking of little Joey, who's going to take care of him, grandma is gone, I'm going to be gone, who's going to raise my little boy. And then comes the pull of that second trigger, and she's gone. That's the aggravating circumstance. * * * What weighs more, these two totally good lives or the defendant's life in the fast lane? * * * "

After reading his entire argument, we conclude that the prosecutor did err. The prosecutor did improperly suggest that how the victims were killed and the suffering and mental anguish the victims endured was an aggravating circumstance. Improperly injecting nonstatutory aggravating circumstances is error. See *State v. Davis* (1988), 38 Ohio St.3d 361, 367, 528 N.E.2d 925, 931. By continually referring to what the victims were thinking, the prosecutor engaged in gross speculation. However, the mention of the victims' personal situations and their relatives did not violate the Constitution. *Payne v. Tennessee* (1991), 501 U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720, overruling *Booth v. Maryland* (1987), 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440, and *South Carolina v. Gathers* (1989), 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876. Moreover, the prosecutor could legitimately refer to the nature and circumstances of the offense, both to refute any suggestion that they were mitigating and to explain why the specified aggravating circumstance, a course of conduct to kill two or more persons, outweighed mitigating factors. See *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus; *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305.

Although error, the prosecutor's sentencing comments did not rise to the level of plain error. The prosecutor's argument made no crucial difference, and Combs received a fair trial. No miscarriage of justice resulted from a death sentence, given the aggravating circumstance and the lack of any significant mitigating factors. Moreover, our independent reassessment of the sentencing evidence will cure the effect of this error. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 124, 559 N.E.2d 710, 729; *State v. Lott, supra,* 51 Ohio St.3d at 170, 555 N.E.2d at 304.

### III

*Trial Issues*

### A

### Admission of Hospital Records

In proposition of law No. 8, Combs argues the trial judge erroneously declined to admit a hospital report reflecting the results of a blood-alcohol

test. The state responds that information about this test was sketchy, that the evidence was properly excluded, and that any error was harmless.

Combs correctly points out that any information about his blood-alcohol level on the date of the offense was relevant in both the guilt and punishment phases. *State v. Sowell* (1988), 39 Ohio St.3d 322, 324, 530 N.E.2d 1294, 1299; see *Bell v. Ohio* (1978), 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010.

However, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Even relevant evidence may be excluded, under Evid.R. 403(A), if its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

Extreme uncertainty surrounded this particular report. The only date reflected in the proffered report was January 21, 1988, which was six months after Combs' hospital admission. Combs proffered no evidence as to when or why the test was given, who gave it, or under what circumstances it was given. Thus, the test was not admissible under the hearsay exception for business records. Combs did *not* establish that the report was made "at or near the time" of the event. Evid.R. 803(6).

Additionally, Combs proffered no explanation as to what the test results meant. As the court of appeals noted, "[t]his report reflected, without interpretation, raw data that would, by itself, have been unintelligible to the ordinary lay person." The test results could easily have been misinterpreted. Under these circumstances, the trial judge did not err in rejecting the report even though the parties agreed it was a hospital record.

Moreover, any error was harmless. Combs presented extensive evidence concerning his drinking prior to the offenses, and the prosecutor conceded that point. Thus, information about his blood-alcohol test was cumulative. Furthermore, our independent sentence reassessment will cure any error to the extent that it might affect the sentences. See *State v. Landrum, supra,* 53 Ohio St.3d 107, at 124, 559 N.E.2d 710, at 729; *State v. Lott, supra,* 51 Ohio St.3d 160, at 170, 555 N.E.2d 293, at 304.

## B

### Involuntary Confession

In proposition of law No. 9, Combs argues that his admission to nurse Wright that he shot two "bitches" or "whores" constituted an involuntary confession and hence was inadmissible. Combs argues involuntariness based

on alcohol, the surgery, and the effects of drugs he was given before and after surgery.

However, Combs cannot benefit from the rule which excludes involuntary confessions. In *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473, the Supreme Court refused to recognize "the right of a criminal defendant to confess to his crime only when totally rational and properly motivated * * *." Instead, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly, supra,* at 166, 167, 107 S.Ct. at 521, 522, 93 L.Ed.2d at 484.

In this case, Combs presented no evidence of coercive police activity or police questioning. Wright simply responded to a question that Combs asked, and Combs' remarks cannot be excluded as involuntary under the Fourteenth Amendment, whatever his mental state at the time. *Colorado v. Connelly, supra.*

Even if Combs' statements were found inadmissible, reversal would not be required. Combs did not object; hence he waived all but plain error, and Combs' convictions did not rest on this confession. Combs conceded at trial that he had shot the two women, and two witnesses testified they saw him do so. Under the circumstances, the claim of plain error lacks any merit.

## C

### Exclusion of Prospective Juror

In proposition of law No. 10, Combs argues the trial judge improperly excluded prospective juror Ann Hagemann from the jury. When asked if she could fairly consider the death penalty, Hagemann replied, "I don't think so because I would feel like I was, you know, you are killing somebody to a degree." She also asserted that she was opposed to the death penalty.

The test for excluding prospective jurors, based on their personal views on the death penalty, "is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph three of the syllabus, following *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841, vacated on other grounds (1985), 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452.

Combs complains Hagemann's answers did not establish such impairment. However, Combs did not object specifically to her exclusion, nor did he seek to question her further or complain about the questions asked. Hagemann did not elaborate on her views. Under the circumstances, ambiguities can be

resolved in the state's favor, and reversal is not required. *Wainwright v. Witt, supra,* 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851–852. " * * * '[D]eference must be paid to the trial judge who sees and hears the juror.' *Witt, supra,* at 426 [105 S.Ct. at 853, 83 L.Ed.2d at 853]. We will not overrule his decision absent an abuse of discretion. *State v. Wilson* (1972), 29 Ohio St.2d 203 [58 O.O.2d 409, 280 N.E.2d 915] * * *." *State v. Tyler* (1990), 50 Ohio St.3d 24, 30, 553 N.E.2d 576, 586.

## IV

### *Other Sentencing Issues*

#### A

#### Court's Independent Assessment

In proposition of law No. 3, Combs challenges this court's authority to reassess the death penalty where the jury's deliberations are tainted by prosecutorial misconduct, injection of nonstatutory aggravating circumstances, or other error. In effect, Combs challenges *Clemons v. Mississippi* (1990), 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725, and asks that this court not implement that decision in Ohio.

We have already rejected Combs' arguments and recognized that appellate reweighing can correct errors in sentencing. "Indeed, it is within the province of this court to conduct its own careful appellate reweighing of aggravating circumstances against mitigating factors to produce a 'measured consistent application' of the death penalty which would be in no way unfair to the defendant. *Clemons v. Mississippi, supra.*" *State v. Lott, supra,* 51 Ohio St.3d at 170, 555 N.E.2d at 304. See *State v. Landrum, supra,* 53 Ohio St.3d at 124, 559 N.E.2d at 729. R.C. 2929.05 mandates such an independent reweighing in both the court of appeals and this court. Accordingly, Combs' proposition of law No. 3 lacks merit.

#### B

#### Mitigating Factors Not Raised

In proposition of law No. 4, Combs argues prejudicial error because the trial court instructed the jury on all statutory mitigating factors, including those not raised by defense counsel. Combs also contends that the prosecutor's argument converted those statutory factors into nonstatutory aggravating circumstances.

In *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, we condemned references to statutory mitigating factors not raised by the evidence; how-

ever, this error does not require reversal. Combs objected neither to the instruction nor to the prosecutor's argument. In fact, defense counsel proposed an instruction listing all statutory factors; hence, Combs induced any instructional deficiency that did occur. A party cannot complain about induced error. *Center Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 31 OBR 587, 511 N.E.2d 106.

Here, no miscarriage of justice, plain error, or material prejudice resulted from references to nonapplicable mitigating factors. The trial court stated twice that some mitigating factors may not be relevant and followed the neutral, statutory words in listing the factors. The prosecutor did argue that none of the statutory mitigating factors applied and did give reasons. However, the prosecutor fairly argued the case and did not try to create nonstatutory aggravating circumstances. See *State v. Roe* (1989), 41 Ohio St.3d 18, 26, 535 N.E.2d 1351, 1361; *State v. DePew, supra,* 38 Ohio St.3d at 289–290, 528 N.E.2d at 557–558.

## C

### Setting Date of Death Sentence

In proposition of law No. 5, Combs argues that R.C. 2929.71, requiring mandatory sentences for firearm specifications, precludes setting an execution date for his death sentences before six years of actual incarceration. Combs argues he has a "right to serve the six years" for the gun specifications before execution.

However, Combs' argument lacks merit. R.C. 2929.71 does not refer to death sentences and does not require that sentences for firearm specifications be served before execution of a death sentence. The operative words of R.C. 2929.71 specify that " * * * each of the three-year terms of actual incarceration imposed pursuant to this section shall be *served consecutively with, and prior to, the life sentences or indefinite* terms of imprisonment imposed pursuant to * * *." (Emphasis added.) Thus, R.C. 2929.71 refers only to life or indefinite term sentences and does not affect execution dates. Moreover, Combs waived this issue by not objecting at trial. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

## D

### Trial Court's Sentence

In proposition of law No. 6, Combs argues the trial court failed to adequately weigh his intoxication at the time of the offenses as a significant "other factor" pursuant to R.C. 2929.04(B)(7). Combs also argues that the trial court

used the nature and circumstances as an aggravating circumstance in its sentencing determination.

The trial judge did not err in considering the asserted mitigating factor of intoxication. Instead, the trial judge simply determined that "defendant was responsive and not under the influence of drugs or alcohol at the time." The assessment of and weight to be given to mitigating evidence are matters for the trial court's determination. " * * * The fact that an item of evidence is admissible under R.C. 2929.04(B)(7) does not automatically mean that it must be given any weight." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus.

The trial judge's reference to the nature and circumstances of the offense was permissible. That reference explained why the evidence "permitted the jury to find that the aggravating circumstance outweighed the mitigating factors." A trial court or three-judge panel "may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf, supra*, 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus. Moreover, the trial court's opinion referred to only one aggravating circumstance, the charged course of conduct. Additionally, our independent sentence reassessment will cure any deficiency in the trial court's sentencing decision. *State v. Landrum, supra*, 53 Ohio St.3d 107, 559 N.E.2d 710; *State v. Lott, supra*, 51 Ohio St.3d 160, 555 N.E.2d 293. Thus, Combs' claim of error lacks merit.

E

Antisympathy Instruction

In proposition of law No. 7, Combs argues plain error because the trial court instructed the jury: "Remember, you must not be influenced in your deliberations by any consideration of sympathy or prejudice." Since Combs did not object at trial nor raise this issue before the court of appeals, waiver applies. That instruction fails to qualify as plain error because the outcome of the trial was not affected. *State v. Long, supra*, 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804; *State v. Williams, supra*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

Moreover, considered as a whole, the instructions adequately informed the jury of its responsibility to consider all the defense's mitigating evidence. See *California v. Brown* (1987), 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934, 942 (O'Connor, J., concurring). An instruction to exclude bias, sympathy or prejudice ensures that sentencing is based on reviewable guidelines, not a juror's personal bias or sympathy. *State v. Jenkins* (1984), 15 Ohio St.3d 164,

15 OBR 311, 473 N.E.2d 264, paragraph three of the syllabus; *State v. Steffen, supra*, 31 Ohio St.3d at 125, 31 OBR at 285, 509 N.E.2d at 396. Requiring that capital sentencing be based on sympathy that jurors feel for an accused would be a new constitutional rule applying the Eighth Amendment. *Saffle v. Parks* (1990), 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415.

### F

### Proportionality Arguments

In propositions of law Nos. 13 and 14, Combs argues against the present structure of Ohio's proportionality review. Combs' arguments lack merit. Proportionality review is not constitutionally required. *Pulley v. Harris* (1984), 465 U.S. 37, 50, 104 S.Ct. 871, 879, 79 L.Ed.2d 29, 40; *State v. Jenkins, supra*, at 176, 15 OBR at 321, 473 N.E.2d at 278. The proportionality review mandated in R.C. 2929.05 "is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed." *State v. Steffen, supra*, paragraph one of the syllabus.

### V

### *Ineffective Assistance of Counsel*

Combs argues in proposition of law No. 11 that his counsel did not effectively assist him because his counsel failed to object to an instruction, to the prosecutor's sentencing argument, and to the admission of an involuntary confession into evidence.

Reversal of a conviction or sentence based on ineffective assistance requires meeting the two-prong standard of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Strickland* requires: (a) deficient performance, "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. As to performance, "[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. See, also, *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, vacated

in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154; *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304.

Combs first argues ineffectiveness because his counsel failed to object to his statement to the police, "talk to * * * [my] lawyer," and the jury considered that statement on the issues of intention and prior calculation and design. However, the Constitution does not promise an error-free trial. "[T]he Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac* (1982), 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783, 804.

Even if counsel performed deficiently, Combs was not prejudiced by the evidence or the instruction. Combs' identity as the killer was not an issue, and the evidence of purposefulness and prior calculation and design was otherwise compelling. As discussed in Part I, no reasonable probability exists that the result of the trial would have been different because of counsel's failure to object. See *Strickland v. Washington, supra*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 696; *State v. Bradley, supra*.

Similar reasoning applies to defense counsel's failure to object to the prosecutor's sentencing argument. Combs argues that the prosecutor erred in speculating on what the two victims were thinking in the moments before their death and by referring to the victims' families. However, the speculative nature of the prosecutor's remarks was apparent, and the references to families were brief. Any deficiency in counsel's performance did not alter the trial result given the aggravating circumstance and the lack of significant mitigating factors. *Strickland v. Washington, supra; State v. Bradley, supra*. Additionally, our independent reassessment of the evidence and the death sentence will rectify any error that occurred. *State v. Landrum, supra*, 53 Ohio St.3d at 124, 559 N.E.2d at 729; *State v. Lott, supra*, 51 Ohio St.3d at 170, 555 N.E.2d at 304.

Combs further argues that his counsel's failure to move to suppress his confession constituted ineffective assistance. However, defense counsel had no basis on which to suppress this statement. *Colorado v. Connelly, supra*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473. Moreover, the admission of the statement made no difference at trial since Combs' identity as the killer was not an issue. (See Part III B, *supra*.)

## VI

### *Constitutionality*

In proposition of law No. 12, Combs challenges the constitutionality of Ohio's death penalty statute using a wide variety of arguments. However,

Combs failed to challenge the statute on many of these issues at trial. By failing to do so, he waived any constitutional objection on those grounds. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus; *State v. Greer* (1988), 39 Ohio St.3d 236, 244, 530 N.E.2d 382, 394. Moreover, we have consistently rejected all of Combs' arguments. See *State v. Beuke* (1988), 38 Ohio St.3d 29, 38, 526 N.E.2d 274, 285; *State v. Bedford* (1988), 39 Ohio St.3d 122, 132, 529 N.E.2d 913, 923; *State v. Sowell, supra,* 39 Ohio St.3d at 336, 530 N.E.2d at 1309.

In proposition of law No. 15, Combs urges an equal protection argument that both the United States Supreme Court and we have rejected. See *McCleskey v. Kemp* (1987), 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585, syllabus.

VII

*Sentencing*

A

Hearing

At the sentencing hearing, Combs presented a variety of witnesses to describe his history, character and background. His mother, Geraldine Combs, testified that Combs had a very close relationship with his now deceased alcoholic father, but Combs did start taking drugs and drinking when he was a senior in high school. Combs had a loving relationship with his own son, Joey, whose mother was Peggy Schoonover. Combs told his mother many· times how sorry he was for what happened.

According to Lonnie and Darlene Britt, Combs' two close friends, Combs and Peggy had a close, loving relationship. Peggy lived with Combs on the weekends, but they argued and Peggy was going to take Joey and leave town. Combs and Joey loved each other very much, and they spent a lot of time together. Combs never threatened or acted violently towards Peggy.

Joann Wood described Combs' six-month stay in a residential treatment center for alcoholic and chemically dependent persons. Combs was addicted to alcohol, Valium, Seconal and marijuana. While there, Combs had group therapy every day and completed the program in March 1985. Earlier, Combs had undergone rehabilitation efforts with a group called Teen Challenge.

Karen Stewart, a nurse, cared for Combs in the hospital for a total of eight to ten weeks after the murders. Combs had numerous medical problems relating to his arms, but he was very cooperative. Although he did not directly discuss the crimes, Combs felt very remorseful and upset about what he had done. Laurie Flowers, an occupational therapist, confirmed Combs'

cooperation in the hospital and described efforts to try to make Combs' left hand functional.

In an unsworn statement, Combs asserted that in high school he was very active in athletics, but he started drinking and taking muscle relaxants and downers (barbiturates). After high school, he continued drinking, smoking marijuana, and taking downers. He met Valerie, another chemically dependent person, and they had a son named Darrell. Later, he met Peggy, and they had a son, Joey.

In July 1987, Combs spent a night at Peggy's house, and Peggy's mother, Joan, who lived across the street, confronted him as he left. Joan held a .22 caliber pistol to his face and told him not to see Peggy or her grandson again. Combs agreed. Joan then "let the hammer like back down on the gun and she said I'm glad I made myself clear to you, now get on out of here." Combs left, went home, and started drinking heavily and later took drugs. On or about July 8, Peggy stopped talking to or seeing him.

By July 15, Combs thought about committing suicide. Tony Liming gave him the keys to go into Richard Liming's house and told him he could take any gun he wanted. After Combs got the shotgun, he thought, "why don't you just see if you can talk to them one more time. * * *" Combs said he drove to downtown Cincinnati and followed them just to talk, but then he blacked out. He does not recall anything until he saw a gun being fired at him and next remembered waking up in a hospital. Combs does not understand why he killed the person he loved most in his life. He feels very empty, regrets what he did, and would gladly give up his life for both of theirs.

Dr. Roger Fisher, a clinical psychologist, interviewed Combs and found his childhood unremarkable until high school when Combs began abusing drugs. Because of drug abuse, Combs was in and out of jail a number of times. His relationship with Peggy was "very, very stormy," but he depended on her. They did not get along "largely because of Mr. Combs['] immaturity, his impulsivity, his tendency to solve problems in sort of explosive temper tantrum like ways." Combs invested a lot of emotional energy in his relationship with Peggy. However, Joan strongly disapproved of Combs and did all she could to force Peggy to stop seeing him. "Combs became locked in * * * a contest of wills between himself and his girlfriend's mother who would influence Peggy." If Combs continued to see Peggy, her mother "would * * * take some steps, violent steps with a gun." Her mother "struck at him with a baseball bat trying to chase him away from her daughter."

Dr. Fisher believed that Combs, despite his history, would still be able to control and plan his behavior. He suffered from no mental disease or defect. "[H]e was capable of purposeful action, of forming insight, that is he would

have known the consequences of his actions * * *." After the murders, Combs displayed significant remorse and wished he could go back and undo what happened.

Lisa Bonvillain, a psychiatric social worker, worked with Combs in individual and group therapy since his incarceration. She corroborated Combs' remorse. His concerns "deal primarily around loss, the loss of his girlfriend, of his sons, of his arm, of his freedom."

## B

### Analysis

The evidence supports the aggravating circumstance that the offense was "part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." R.C. 2929.04(A)(5). After independently considering the evidence and possible mitigating factors, the nature and circumstances of the offense offer some mitigating features. Combs loved his son and girlfriend and apparently acted out of an obsessive concern with those relationships. Nonetheless, the facts of the offense, including his car chase of Peggy and Joan and the brutal facts of their death, negate assigning any mitigating weight to this factor.

In contrast, Combs' history and background offer mitigation, although his character does not. Combs had significant alcohol and chemical dependency problems. He deeply loved his son, Joey. Although Combs lost his right arm and his left arm was paralyzed, that condition resulted from his own misconduct. Nonetheless, that loss itself represents a substantial burden on the remainder of Combs' life.

In considering statutory mitigating factors, the evidence shows that neither Peggy nor Joan "induced or facilitated" the offense within the meaning of R.C. 2929.04(B)(1). Both attempted to escape from Combs and did what they could to avoid a confrontation. The factor of "duress, coercion, or strong provocation," as set forth in R.C. 2929.04(B)(2), is not applicable. Nonetheless, Joan's apparent decision, several days earlier, to threaten Combs with a gun and demand that he never see Peggy or Joey again, while not justifying or excusing his subsequent acts, could be considered mitigating. Peggy's decision to stop Combs from visiting their son also might be regarded as a provocation. Even though these acts do not fit R.C. 2929.04(B)(2), we will consider them as "other factors" under R.C. 2929.04(B)(7).

The psychologist's testimony failed to present any evidence of a mental disease or defect qualifying under R.C. 2929.04(B)(3), Combs' age of twenty-nine negates R.C. 2929.04(B)(4), and Combs does not claim to lack a significant

criminal history under R.C. 2929.04(B)(5). No other actors were involved; hence, R.C. 2929.04(B)(6) is inapplicable.

Mitigating factors under R.C. 2929.04(B)(7) include Combs' alcohol and drug dependency, his psychological weakness, his physical disability, his remorse, the influence of drugs and alcohol at the time of the offense, Peggy's denial of visitation, and Joan's earlier threats.

Nonetheless, the aggravating circumstance as to each offense outweighs the mitigating factors. The aggravating circumstance, established by competent evidence beyond a reasonable doubt, is substantial: the deliberate murder of two persons with prior calculation and design. Combs not only killed Peggy and Joan, as he intended, he did so after expending great effort to obtain a shotgun and then chasing them through the streets. Aside from his remorse, which appears genuine, the mitigating factors that he does present are meager and entitled to little weight. Combs was offered several opportunities to control his chemical and alcohol dependency, but none proved successful. Although he may have been under the influence of alcohol or drugs at the time of the murders, he functioned enough to drive and to chase Peggy and Joan in their car. Any provocation by Joan and Peggy was over a week old.

In this case, we conclude that the death penalty is both appropriate and proportionate when compared with similar capital cases. *State v. Moreland* (1990), 50 Ohio St.3d 58, 552 N.E.2d 894; *State v. Hicks* (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030; *State v. Sowell, supra,* 39 Ohio St.3d 322, 530 N.E.2d 1294; *State v. Bedford, supra,* 39 Ohio St.3d 122, 529 N.E.2d 913; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; *State v. DePew, supra,* 38 Ohio St.3d 275, 528 N.E.2d 542; *State v. Spisak* (1988), 36 Ohio St.3d 80, 521 N.E.2d 800; *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568; *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407.

Accordingly, appellant's convictions and sentences are affirmed.

*Judgment affirmed.*

SWEENEY, DOUGLAS and RESNICK, JJ., concur.

HOLMES, J., concurs in judgment only.

WRIGHT and H. BROWN, JJ., dissent.

WRIGHT, J., dissenting. I must respectfully dissent from this court's affirmance of the imposition of the death penalty. The prosecutorial misconduct graphically outlined by the majority simply cannot be passed off as harmless error beyond a reasonable doubt. Unlike several cases in which we have

invoked the doctrine of harmless error or rejected plain-error analysis, substantial mitigating factors were extant in this case.[2]

This court has been most reluctant to reverse imposition of the death penalty due in large measure to the effect of *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744. The General Assembly could easily deal with the effect of *Penix* by authorizing a second trial limited to the issue of whether the aggravating circumstance or circumstances outweigh the mitigating factors beyond a reasonable doubt. The cure for this legislative omission does not lie in repeatedly excoriating prosecutorial misconduct while allowing a tainted death penalty to stand. The right to a fair trial (including, most especially, the sentencing phase of a capital case) is of paramount consideration in our criminal justice system.

" '[I]t is most important that the sentencing phase of the [capital] trial not be influenced by passion, prejudice, or any other arbitrary factor.  * * * With a man's life at stake, a prosecutor should not play on the passions of the jury.' " *State v. DePew* (1988), 38 Ohio St.3d 275, at 299, 528 N.E.2d 542, at 566 (Wright, J., concurring in part and dissenting in part), quoting *Hance v. Zant* (C.A. 11, 1983), 696 F.2d 940, 951, certiorari denied (1983), 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393. I had hoped that my repetition of this lesson would eventually move this court to accept it, see *State v. Bedford* (1988), 39 Ohio St.3d 122, at 134–135, 529 N.E.2d 913, at 925–926 (Wright, J., dissenting), but I see that it has not. Accordingly, I must dissent.

H. BROWN, J., concurs in the foregoing dissenting opinion.

---

2. During the sentencing phase, Combs presented a significant amount of testimony and evidence in mitigation. The record reflects a loving relationship between Combs and his son, and a demonstration by Combs of genuine remorse for his actions. The record also reflects that Combs lived a life long-afflicted with the pains of alcohol and chemical dependence, and that he acted at the time of the shooting out of an obsessive concern that he would be prevented from ever seeing his son again.

Additionally, the jury heard Combs state that several days prior to and on the day of the incident, Combs had contemplated suicide. The jury also heard that as a result of the incident, Combs lost his right arm and his left arm became paralyzed—losses that constitute a significant burden for the remainder of his life. It is the sum of these mitigating factors that the jury considered in an environment tainted by prosecutorial misconduct. Whether their weighing of the mitigating factors in an atmosphere free from prosecutorial abuse would have brought about a different result, we will never know.