OPINION
Defendant, Antonio Black, appeals from his conviction and sentence for Aggravated Robbery and Felonious Assault with gun specifications.
On May 6, 1999 at 10:00 p.m., two males entered Milano's restaurant on North Main Street in Dayton. Both wore hooded jackets and bandanas over their face, concealing their identity. One man immediately pulled a gun and pointed it at several people, shouting at the cashier, Cheryl Ross, to open the cash register and give him the money inside. The second man stood by the front door, holding a plastic bag in his hand. When Ms. Ross was unable to open the cash register, the first man shot her in the leg. The two then fled through the front door and across Main Street.
Several of the restaurant's employees witnessed the attempted robbery and shooting. A video surveillance camera recorded the events. The gunshot wound severed two arteries in Ms. Ross' leg, and she underwent surgery at Good Samaritan Hospital soon after. Although the eyewitnesses could not identify the perpetrators, they noted that the "bag man" was shorter and younger than the gunman, and that the "bag man" wore white gym shoes with dark trim and white lines.
Acting on a tip from Crime Stoppers, police interviewed Defendant, Antonio Black, on May 24, 1999. Defendant orally confessed three different times to three different police officers that he was the "bag man" in the Milano's robbery. He identified Michael Henry as the gunman. The following day, May 25, 1999, Defendant again orally confessed his participation in this crime.
Defendant was indicted on one count of Aggravated Robbery, R.C.2911.01(A)(1), and one count of felonious assault, R.C. 2903.11(A)(2). A three year firearm specification was attached to each charge. R.C.2941.145.
Defendant was found guilty following a jury trial of both charges and the firearm specifications. The trial court subsequently sentenced Defendant to eight years imprisonment on each charge, the sentences to run concurrently. The trial court also merged the firearm specifications and imposed one additional three year prison term, that term to be served consecutive to the other sentences.
From his conviction and sentence, Defendant has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE IS NO SUBSTANTIAL EVIDENCE UPON WHICH THE TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS OF THE OFFENSES HAD BEEN PROVEN BEYOND A REASONABLE DOUBT.
Defendant was found guilty of aiding and abetting the principal offender in committing aggravated robbery and felonious assault. Aggravated robbery is defined by R.C. 2911.01(A)(1), which provides:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
Felonious assault is defined by R.C. 2903.11(A)(2), which provides:
No person shall knowingly do either of the following:
* * *
 Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
Ohio's complicity statute, R.C. 2923.03, provides in relevant part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
In arguing that his convictions are against the manifest weight of the evidence, Defendant points out that there is no physical evidence linking him to the crimes, that none of the eyewitnesses are able to identify him, and that he cannot be positively identified from the surveillance tape which recorded the robbery and shooting. Defendant argues that the testimony of his former cellmate at the Montgomery County jail should be disbelieved because the former cellmate received a substantial benefit from the State in his own case in exchange for his testimony. Defendant also claims that all three police detectives in this case lied when they testified that Defendant orally confessed to this crime in their presence.
Six eyewitnesses and employees of Milano's testified at trial regarding the events surrounding this crime, the corpus delicti. Moreover, Defendant's separate oral confessions to three different Dayton police detectives, plus his incriminating statements to his cellmate, unequivocally demonstrate that he was one of the two perpetrators, the so called "bag man." In addition, the videotape taken by the surveillance camera at Milano's corroborates Defendant's oral confessions concerning the sequence of events that transpired. The tape also corroborates the testimony of the eyewitnesses.
At trial, Defendant denied participating in this robbery. He testified that his former cellmate and the three police detectives who claim he orally confessed his participation had all lied. The jury had the opportunity to hear the witnesses and observe their demeanor. It was for the jury to determine which witnesses to believe and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230.
In reviewing this record as a whole we cannot say that in choosing to believe the State's version of the events, rather than Defendant's, the jury lost its way, or that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has resulted. Defendant's conviction is not against the manifest weight of the evidence. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN ALLOWING THE POLICE REPORT OF THE ORAL CONFESSION TO BE EXHIBITED TO THE JURY AND SENT INTO THE JURY ROOM DURING DELIBERATIONS.
Three Dayton police detectives each testified at trial that Defendant had separately confessed to the offenses with which he was charged. Det. Bilinski testified that he contemporaneously wrote down what Defendant said. Det. Bilinski subsequently showed the written statement to Defendant, who acknowledged that the statement accurately recorded what he had said. Defendant refused to sign the statement, however. The writing was offered in evidence by the State through Det. Bilinski's testimony.
At the conclusion of the State's case-in-chief the State moved to admit the written statement prepared by Det. Bilinski. Defendant objected, arguing that the statement was akin to a police report describing Defendant's oral confession, and was hearsay offered to bolster the testimony of the three detectives who claimed that Defendant had orally confessed to them. The trial court overruled Defendant's objection and admitted the written statement as State's Exhibit 13. Defendant now argues that the trial court abused its discretion in admitting this evidence.
The admission or exclusion of evidence is a matter resting within the trial court's sound discretion and its decision in such matters will not be reversed on appeal absent an abuse of discretion. State v. Combs (1991), 62 Ohio St.3d 278; State v. Lowe (1994), 69 Ohio St.3d 527. An abuse of discretion means more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
While Defendant orally confessed and explained the events that transpired at Milano's, Det. Bilinski contemporaneously wrote down what Defendant was saying. Det. Bilinski then presented this written statement to Defendant, read it back to him, and Defendant confirmed that it was accurate; that is, what Det. Bilinski wrote is what Defendant said had happened. In admitting this written statement, the trial court likened it to a recorded statement or a transcript of an oral statement, because Defendant had expressly acknowledged the truth of the statement. We agree. The written statement was properly admitted as an adoptive admission, which is not hearsay. Evid.R. 801(D)(2)(b).
Defendant makes much of the fact that the writing was prepared by Det. Bilinski, not by him, and that he never signed it. In other words, the statement was the out of court declaration of Det. Bilinski, not the Defendant. However, even if Det. Bilinski is viewed as the declarant of this written statement, the statement cannot be hearsay because Det. Bilinski, the "declarant," testified at trial concerning the written statement. Evid.R. 801. In either event, the trial court did not abuse its discretion in admitting this evidence.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THERE IS INSUFFICIENT PROOF OF INTENT BY APPELLANT FOR CONVICTION OF EITHER AGGRAVATED ROBBERY AND CERTAINLY NOT FOR FELONIOUS ASSAULT.
Defendant was found guilty of aiding and abetting his co-defendant, Michael Henry, (1) in attempting to knowingly obtain control over property without the owner's consent by the use of a deadly weapon and (2) in knowingly causing physical harm to another by means of a deadly weapon.
Knowingly is defined in R.C. 2901.22(B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
Defendant argues that the evidence is legally insufficient to demonstrate that he acted with the kind of culpability or mens rea, required for the commission of these offenses because the evidence fails to demonstrate that Defendant knew a gun would be used by Henry to commit this robbery, much less to harm someone. Accordingly, Defendant argues that the trial court should have directed a verdict of acquittal as to both offenses. Crim.R. 29. We disagree.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259 :
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
In State v. Lockett (1976), 49 Ohio St.2d 48, the Ohio Supreme Court held that when a robbery and the manner of its accomplishment included the use of a gun which would be reasonably likely to produce death, each person engaged in a common design or plan to commit the robbery may be found guilty with the principal killer as an aider and abettor in the homicide, and the purpose to kill by the aider and abettor may reasonably be inferred from the circumstances.
The evidence presented in this case, including Defendant's own confessions, demonstrate that Michael Henry, his co-defendant, had a gun shortly before this crime occurred, when both men were on Main Street, and that Henry spoke to Defendant about committing a robbery. Moreover, upon entering Milano's, Henry immediately produced the gun and began to wave it around. As the surveillance videotape shows, Defendant continued to participate in this robbery by holding the bag to put the money in and acting as a lookout at the front door. Defendant made no effort to disassociate himself from the events that transpired, even though it was obvious that a gun was being used to commit this robbery.
The jury could reasonably infer from this evidence that Defendant knew a gun would be used to accomplish this robbery. From the manner in which this robbery was to be accomplished and Defendant's active participation in those events, the jury could reasonably infer that Defendant possessed the culpable mental state, or mens rea, required to aid and abet Henry in committing the offenses of aggravated robbery and felonious assault. Lockett, supra.
Viewing the evidence presented in this case and the reasonable inferences deducible therefrom in a light most favorable to the State, as we must for purposes of Crim.R. 29 motions challenging the sufficiency of the evidence, we conclude that a rational trier of fact could find that all of the essential elements of the offense charged, including Defendant's culpable mental state, were proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence, and the trial court properly denied his motion for acquittal.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN ALLOWING THE TENNIS SHOES TO BE INTRODUCED INTO EVIDENCE BUT NOT EXHIBITED TO THE JURY.
During the trial the prosecutor showed one of the eyewitnesses to the crime a pair of gym shoes that were recovered from Defendant at the time of his arrest, several days after the robbery. The witness examined the shoes, State's Exhibit 11, and testified that they looked similar to the shoes worn by the so-called "bag man."
The prosecutor moved for admission of State's Exhibit 11, along with several other exhibits at the close of the State's case. However, the trial court never expressly ruled on the State's request to admit State's Exhibit 11, the shoes. During jury deliberations one of the jurors asked the trial court about the shoes. The trial court denied the request because the shoes had not been admitted into evidence.
Defendant complains that the trial court erred when it allowed the shoes to be introduced but refused to permit the jury to have them in the jury room along with the other exhibits to examine during their deliberations. While the shoes were marked as an exhibit, and there was some limited testimony about them, the shoes were not admitted into evidence by the trial court.
R.C. 2945.35 is applicable in this situation, and provides:
 Upon retiring for deliberation, the jury, at the discretion of the court, may take with it all papers except depositions, and all articles, photographs, and maps which have been offered in evidence. No article or paper identified but not admitted in evidence shall be taken by the jury upon its retirement.
The trial court did not abuse its discretion in refusing to allow the jury, upon retiring to deliberate, to take back to the jury room shoes which had not been admitted into evidence. R.C. 2945.35.
The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________________ GRADY, J.
WOLFF, P.J. and FAIN, J., concur.