JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michael Hidvegi ("defendant"), appeals following his conviction for assault in violation of R.C. 2903.13(B), along with a specification that the victim of the offense was a peace officer who suffered serious physical harm. Defendant challenges the admission of the victim's medical records into evidence and also the mandatory minimum prison term that the trial court imposed as his sentence. For the reasons that follow, we affirm.
 {¶ 2} At trial, the State presented the testimony of the responding officer, four eyewitnesses, and the victim. According to the witnesses, defendant attended a party at his uncle's house on July 1, 2006, along with his cousin and co-defendant, Anthony Soubkis. The victim, Dan Siwinski ("Siwinski"), was also a relative that had attended the party. Siwinski was a Brecksville police officer but was off-duty while at the party on July 1, 2006. Defendant and the co-defendant knew Siwinski was a police officer and several witnesses testified that both of them made derogatory comments about that on the night in question, specifically referring to him as a "pig" in the context of his profession.
 {¶ 3} Siwinski admitted he was illegally setting off mortar fireworks with defendant and the co-defendant. A fight broke out between Siwinski and the co-defendant, ending with Siwinski "foot sweeping" the co-defendant to the ground. Siwinski walked away. Twenty minutes later, the co-defendant "stormed" towards *Page 2 
Siwinski demanding to know why he was "disrespecting" him and also stating, "you think you could disrespect me because you're a cop?"
 {¶ 4} Siwinski testified that a second fight ensued and the two fell to the ground with Siwinski on top of the co-defendant. Siwinski stated that defendant jumped on his back causing his shoulder to immediately "pop" and then defendant proceeded to hit him in the head saying, "how do you like that, pig?" Although at least two other males intervened in the altercation, Siwinski was certain that only the defendant and co-defendant physically touched him.
 {¶ 5} The other eyewitnesses were not able to say who caused Siwinski's shoulder injury but they all saw his arm "hanging" from the socket following the second fight. Siwinski was taken from the party to the hospital where he was treated for his injuries. Siwinski testified that his only serious physical injury was the shoulder separation and that he was certain defendant caused it.
 {¶ 6} Siwinski testified that he suffered excruciating pain, underwent physical therapy, shoulder surgery, and was unable to work from July until November, due to his injuries. Over the defendant's objection, the trial court admitted the certified copies of Siwinski's medical records into evidence.
 {¶ 7} The trial court granted defendant's motion for acquittal in part by reducing the charge from felonious assault to assault, in violation of R.C. 2903.13(B). Specifically, the court found that the evidence was insufficient to *Page 3 
establish that defendant acted "knowingly" in causing serious physical harm to the victim but that it was sufficient to establish "recklessness" on his part. Based on the State's evidence, the court also reduced the co-defendant's charge to assault, in violation of R.C. 2903.13(A). Specifically, the court concluded that the evidence was insufficient to establish that the co-defendant caused serious physical harm to the victim or that he aided and abetted the defendant in that regard.
 {¶ 8} The jury found both defendant and the co-defendant guilty of assault. However, the jury found the co-defendant not guilty of the specification that alleged the victim was a peace officer assaulted while in performance of his official duties. Conversely, the jury found defendant guilty of the specification that the victim was a peace officer that suffered serious physical harm.
 {¶ 9} Defendant now appeals, raising two assignments of error for our review as set forth below.
 {¶ 10} "I. The court erred in admitting the medical records without an expert's interpretation and explanation of their meaning and relevance."
 {¶ 11} Defendant concedes that the medical records were relevant and self-authenticating. Notwithstanding, he believes that any probative value of the records was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury and should have been excluded pursuant to Evid. R. 403. *Page 4 
 {¶ 12} Evid. R. 403 prohibits the introduction of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Jacks (1989), 63 Ohio App.3d 200, 207.
 {¶ 13} R.C. 2901.01(A)(5) provides that "`Serious physical harm to persons' means any of the following:
 {¶ 14} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 15} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 16} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 17} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 18} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 19} This Court has held that "[w]here injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as *Page 5 
defined by R.C. 2901.01(A)(5)." State v. Lee, Cuyahoga App. No. 82326,2003-Ohio-5640, ¶ 24, citing State v. Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115. Accordingly, the medical records were probative of the serious physical harm element of the assault and police officer specification that defendant was charged with committing.
 {¶ 20} Defendant maintains that without expert testimony the jury could not understand or would misinterpret the "raw data" of the emergency room records and subsequent surgery and physical therapy notes.
 {¶ 21} Defendant relies on State v. Combs (1991), 62 Ohio St.3d 278,284, in urging us to conclude that the jury was mislead by the hospital records. In Combs, the Ohio Supreme Court concluded that the lower court properly excluded a hospital record reflecting defendant's blood alcohol test that took place six months after the defendant's hospital admission and which was not made "at or near the time" of the event. Further, the court explained that there was no evidence as to "when or why the test was given, who gave it, or under what circumstances it was given." Id. Alternatively, the Ohio Supreme Court held that any error in excluding the evidence was harmless because it was merely cumulative of other testimony in the record, namely the defendant's testimony that he was intoxicated and the State's concession to that fact. *Page 6 
 {¶ 22} Unlike the records examined in Combs, the hospital records that were admitted in this case include certified emergency room documents taken on the date of the offense. Siwinski's testimony explains when, why, and under what circumstances the medical records were generated. Likewise, the medical records are cumulative of Siwinski's testimony; corroborating that he went to the hospital, had a dislocated shoulder, experienced pain, did not have a pre-existing shoulder problem, and underwent surgery and physical therapy. Siwinski testified in this case and was fully cross-examined by both the defendant and co-defendant's counselors.
 {¶ 23} Again, unlike the blood alcohol test result at issue inCombs, the records in this case do not consist solely of "raw data" that is unintelligible to a lay person. A lay person could easily understand (without expert interpretation) much of the probative information contained in the records, such as "chief complaint: Right shoulder pain and dislocation" and a "history of present illness" detailing that the patient reported his involvement in "an altercation. The patient states that he was attacked and ended up in a fight * * * [the patient] was wrestling and dislocated his right shoulder. The patient has severe pain in his right shoulder * * * no previous history of shoulder dislocation." The medical chart notes "clinically on exam, the patient appears to have inferior shoulder dislocation." (State's Exhibit 2.)
 {¶ 24} State's Exhibit 3 contained certified records from the surgery center and therapy notes. The records pertain to the victim's shoulder injury and his ongoing *Page 7 
treatment. Once again, the defense had ample opportunity to cross-examine the victim about his surgery and the shoulder injury. None of the testimony elicited from the victim contradicted the medical records. We also note that the record indicates that the State supplied the medical records to the defense at least five days prior to trial. Accordingly, the defense was free to call its own expert to contradict or extrapolate and expound upon any exculpatory information it felt was contained in those records.
 {¶ 25} Based on the law and the record, the trial court did not abuse its discretion by admitting the medical records into evidence.
 {¶ 26} Assignment of Error I is overruled.
 {¶ 27} "II. The punishment was disproportionate and inconsistent with [the] sentence imposed on the co-defendant."
 {¶ 28} Defendant contends that his sentence was disproportionate and inconsistent with the sentence imposed on the co-defendant. However, the applicable analysis in assessing the proportionality of a sentence is not whether a defendant received the same or similar sentence as a co-defendant who was convicted of a different crime, but whether the sentence imposed is "consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). Defendant concedes that he was convicted of a different offense than his co-defendant. Defendant further acknowledges that the trial court imposed the *Page 8 
mandatory minimum sentence on him that was allowed by law. Accordingly, defendant's contention that he was "singled out" for "an inconsistent harsher penalty" has no merit. Moreover, there is no lesser sentence that could possibly be imposed as a result of defendant's conviction. See R.C. 2903.13(C)(4).
 {¶ 29} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, J., and MARY J. BOYLE, J., CONCUR *Page 1