The STATE of Ohio, Appellee,

v.

EDWARDS, Appellant.

[Cite as *State v. Edwards* (1997), 123 Ohio App.3d 43.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–95–048.

Decided Sept. 30, 1997.

**44**

*Ronald R. Smith*, for appellee.

*Geoffrey L. Oglesby*, for appellant.

*Per Curiam.*

Following a trial in the Erie County Court of Common Pleas, a jury returned a verdict finding appellant, Otis Edwards, guilty of child endangering, a violation of R.C. 2919.22(B)(2), on June 2, 1995. The trial court accepted the verdict of the jury in a judgment entry filed on June 21, 1995. The trial court also filed a second judgment entry on June 21, 1995, in which it sentenced appellant to prison for four to ten years and ordered appellant to pay the costs of prosecution.

Appellant is appealing his conviction and sentence and has presented two assignments of error:

"Assignment of Error No. 1.

The defendant was deprived of his rights to effective assistance of counsel by his trial counsel's numerous failures to properly object and that his counsel's representation failed to meet an objective standard of reasonable representation with a result of prejudice in contravention of the Sixth and Fourteenth Amend-

ments to the United States Constitution and Article One, Section Ten of the Ohio Constitution."

"Assignment of Error No. 2.

"The court committed plain error by allowing numerous hearsay statements to be introduced."

In support of his first assignment of error, appellant complains that several witnesses were allowed to express their belief that the child who accused appellant of injuring him was a truthful child. Appellant further complains that his trial counsel never objected to the testimony and asserts that the failure of his trial counsel to object constituted ineffective assistance of counsel.

The test for showing that a defendant received ineffective assistance of counsel is well settled in Ohio. The Supreme Court of Ohio has ruled:

"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsels performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674], followed.)" *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

In addition, the Supreme Court of Ohio has made it clear that a presumption exists in Ohio that a licensed attorney is competent. *State v. Jackson* (1980), 64 Ohio St.2d 107, 110–111, 18 O.O.3d 348, 350–351, 413 N.E.2d 819, 822–823. Keeping these standards in mind, we now consider the specific arguments presented by the parties in this case.

A review of the record shows that the victim was a sixteen-year-old mentally handicapped young man who lived with his grandparents. His grandmother was sick and in the hospital when the incident in question occurred. Appellant was a good friend of the grandparents and frequently visited the home.

On December 17, 1994, appellant was at the grandparents' home. He was vacuuming and attempting to clean the house. According to the victim, appellant and the victim got into an argument, ostensibly because appellant told the victim to help him clean and the victim responded that appellant was not his boss. A physical scuffle ensued. The victim suffered a bloody nose and fell against a table in a bedroom, causing severe bruising to his back muscles.

Several witnesses were called by the state to establish its case. Included in the witnesses were the victim; his grandfather, who was in the apartment when the incident occurred; a neighbor, who saw the victim right after the incident occurred when he ran to her house; the victim's school teacher; a clinical

psychologist who evaluated the victim after the incident occurred; and the victim's case manager from the Erie County Board on Mental Retardation and Developmental Disability.

The prosecutor asked several expert witnesses, including the victim's teacher, the victim's case manager, and the clinical psychologist, direct questions about whether they believed that the victim was telling them the truth when he recounted his version of how the incident occurred. For instance, just after the teacher explained the version the victim told her, the prosecutor asked, "Now, in the past dealing with [the victim] how have you found his accuracy to be?" The teacher answered: "Excellent." The prosecutor continued: "What do you mean by that?" The teacher elaborated: "He's a very truthful young man. He's one of my students that if I have a really important job that needs to be done or I need him to supervise another student he's very trustworthy and, uhm, he, he just goes overboard to do a good job be it in the classroom or be it in the nursing home that we work at."

Rather than object to the testimony of the teacher regarding the truthfulness of the victim, appellant's trial counsel asked on cross-examination: "Based on your experience is there a probability that [the victim] fabricated his story?" The teacher replied: "I don't think so."

The clinical psychologist testified:

"Yeah. I, I, through the course of the testing, which takes several hours as I've said, there was a certain amount of rapport with him. And I was able to ask him questions about his family system, about where he was living now, uhm, his likes and dislikes.

"I was able to ask him some questions about the allegations of, of abuse. And really [the victim] is, uhm, fairly, uhm, he's fairly good telling you what happened to him.

"Uhm, he's fairly concrete in his thinking but, uhm, you know, he's relatively, uhm, verbally fascial [sic]. I found him to be a good, a good responder. He gave what I considered to be pretty accurate information.

"In fact, uhm, I think his ability to, uhm, to malinger; that is, to uhm, produce false information regarding his emotional and psychological state is, would probably be quite limited."

Once again, appellant's trial counsel raised no objection to the testimony about the truthfulness of the victim. Instead, he asked:

"Okay. Uhm, based on your contact and evaluation, your staff's evaluation, you mentioned that you felt that [the victim] had a low probability of lying or fabrication."

The clinical psychologist answered: "I think that his ability to do that is, would be limited, yeah." Appellant's trial counsel then asked: "But he does have some ability to fabricate?" And the clinical psychologist replied: "Yes, anyone would. Yes."

The prosecutor asked the victim's case manager:

"Now, can you explain to the ladies and gentlemen of the jury, uhm, over the time you've known [the victim] how he relays information? Has it been considered by you to be fairly accurate?"

The case manager answered:

"Uhm, absolutely. I don't feel that [the victim] holds anything back. I think he is, uhm, understands that I'm his advocate; that I'm his friend; that I'm there to provide help whenever he needs it. And it's been explained to him that that's my role.

"And I think [the victim] has been very honest with the information that he's shared with me. I don't think [the victim] can keep a secret from me."

Appellant's trial counsel did not object to the testimony and did not cross-examine the case manager.

█ Because no objections were raised by trial counsel, we must consider whether the admission of the testimony was plain error. Plain error exists if "substantial rights of the accused are so adversely affected as to undermine the 'fairness of the guilt determining process.'" *State v. Swanson* (1984), 16 Ohio App.3d 375, 377, 16 OBR 430, 432, 476 N.E.2d 672, 675 (quoting *State v. Gideons* [1977], 52 Ohio App.2d 70, 77–78, 6 O.O.3d 50, 53–54, 368 N.E.2d 67, 72–73).

The Supreme Court of Ohio has held:

"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, syllabus.

█ In the same case, the Supreme Court stated that the admission of such opinion testimony at trial "was not only improper—it was egregious, prejudicial and constitutes reversible error." *Id.* at 128, 545 N.E.2d at 1240. This court and the Fifth District Court of Appeals of Ohio have previously stated that the statement of the Supreme Court of Ohio shows that such testimony can constitute plain error, as it is prejudicial and affects a substantial right. *State v. Gibbons* (Sept. 19, 1994), Stark App. No. CA–9556, unreported, 1994 WL 530700; *State v. Celestino* (Mar. 19, 1993), Sandusky App. No. S–91–50, unreported, 1993 WL 77002. We find that in this case, because the testimony about the truthfulness of the child was so pervasive, and the testimony of the child was so central to the state's case, the admission of the testimony constituted plain error.

■ The decision of the Supreme Court of Ohio in *State v. Boston,* 46 Ohio St.3d 108, 545 N.E.2d 1220, had been in effect for several years before appellant was brought to trial in this case. His trial counsel failed to meet an objective standard of reasonable representation when he failed to object to the improper testimony from the expert witnesses in this case. In addition, the performance of the trial counsel was prejudicial to appellant's case. Accordingly, appellant's first assignment of error is well taken.

Appellant's second assignment of error is rendered moot by our disposition of the first assignment of error.

The judgment of the Erie County Court of Common Pleas is reversed, and this cause is remanded for further proceedings consistent with this decision. Appellee is ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, GLASSER and SHERCK, JJ., concur.