DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Sandusky County Court of Common Pleas, wherein a jury found appellant, Dale Metz, guilty of five counts of rape of a minor under the age of thirteen, in violation of R.C. 2907.02(A)(1)(b). The court sentenced appellant to a life sentence on each of the five counts, with Counts 1, 2 and 3 to be served consecutively. The court ordered Counts 4 and 5 to be served concurrently with Count 3. In addition, the trial court determined that appellant was a sexual predator pursuant to R.C. 2950.09. Appellant appeals that judgment and sets forth the following assignments of error:
 "I. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS AS A RESULT OF THE STATE'S FAILURE TO PROVIDE SPECIFIC DATES FOR THE CRIMINAL OFFENSES CONTAINED IN THE INDICTMENT."
 "II. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE TRIAL COURT ERRED BY ALLOWING AN EXPERT WITNESS TO VOUCH FOR THE CREDIBILITY OF THE SEXUAL ASSAULT ALLEGATIONS."
 "III. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS WHEN THE TRIAL COURT ERRED BY ALLOWING AN INVESTIGATOR AND A DOCTOR TO IDENTIFY APPELLANT AS THE PERPETRATOR BASED ON HEARSAY STATEMENTS."
 "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED APPELLANT'S RIGHT TO A FAIR TRIAL BY PERMITTING THE STATE OF OHIO TO ELICIT TESTIMONY THAT WAS A COMMENT ON HIS FIFTH AMENDMENT RIGHTS. "
 "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY IMPROPERLY COMMENTING ON THE EVIDENCE AND TESTIMONY WHICH VIOLATED APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL AND DUE PROCESS OF LAW."
 "VI. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE TRIAL COURT ERRED BY FAILING TO HOLD A COMPETENCY HEARING."
 "VII. THE TRIAL COURT ERRED IN CLASSIFYING APPELLANT AS A SEXUAL PREDATOR WITHOUT A RECORD OF CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE FINDING."
 "VIII. THE TRIAL COURT ERRED WHEN IT APPLIED SENATE BILL 2 RETROACTIVELY TO THE CRIMES OF RAPE, COMMITTED WITHIN THE TIME FRAME OF 1992-1996."
 "IX. APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."
 "X. APPELLANT'S CONVICTION WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "XI. THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO CONSECUTIVE LIFE SENTENCES SINCE THERE WAS NO EVIDENCE THAT APPELLANT COMPELLED THE VICTIM TO SUBMIT BY FORCE OR THREAT OF FORCE."
On August 24, 1999, appellant was indicted by the Sandusky County Grand Jury on six counts of the rape of a child under thirteen years of age, each count being a separate violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Each count alleged only that the rape occurred during a particular year, those being 1992, 1993, 1994, 1995, 1996 and 1997. The indictment did not allege that the rapes occurred on any specific dates during those years. Although appellant filed a motion for a bill of particulars requesting, among other things, the dates upon which the rapes were supposed to have occurred, appellee, the state of Ohio, did not provide appellant with any of the requested information.
At appellant's trial, April, the mother of the victim, testified as follows. She and her son Tony, then five years of age, began living with appellant in July 1992. About the time he started school that following fall, Tony began experiencing emotional and physical problems. The child did not "listen" and would have temper tantrums. Physically, he suffered from constipation and was diagnosed as having encopresis, a condition involving the uncontrolled passage of stool into one's underwear or clothing. Neither Tony's emotional nor his physical condition improved over the next several years. Beginning in the third grade, Tony would frequently get into physical fights with other children. April was told that he suffered from Attention Deficit Disorder, and Tony started taking Ritalin, with little effect. According to April, appellant acted as Tony's "father" throughout the years that they lived together.
In 1996, appellant was laid off from his job and was unable to find work in Sandusky County. Therefore, in the spring of 1997 the family, that is, appellant, April, Tony and the couple's son, Eric, moved to Tennessee. The physician who treated Tony in Tennessee recommended counseling for Tony to help with his aggressive/violent behaviors. In mid-August 1998, April learned, at a special counseling session, that appellant had been allegedly sexually abusing her son since he was five years old. April immediately took the children and moved back to Sandusky County, Ohio, where she informed Sandusky County Children Services ("SCCS") of the alleged rapes. According to his mother, Tony's behavior improved shortly after their return to Ohio.
Susan Charney, a criminal investigator for SCCS, testified that she interviewed Tony, his mother and his father and attempted to obtain an interview of appellant through a Tennessee children services agency. Charney also referred Tony to the Medical College of Ohio for a physical examination. After gathering as much information as possible, Charney referred the matter to the Sandusky County Prosecutor.
In his testimony, W. David Gemmill, M.D., stated that his examination of Tony revealed a "cupping" or "funneling" of the buttocks around the anus that is consistent with recurrent trauma to the anus. In the doctor's opinion, Tony "was sodomized recurrently for a long enough period of time and enough times to produce this physical change." Dr. Gemmill also noted that constipation/encopresis is suggestive of sexual abuse. Dr. Gemmill's report and diagnosis were also entered in to evidence, without objection.
The final witness for the prosecution was Tony, who was thirteen years old at the time of appellant's trial. Tony testified the sexual abuse began before he started kindergarten, on an afternoon when appellant was acting as his baby sitter. Tony stated that Dale called him into the bedroom, and, with Tony leaning face-down over the bed, inserted his penis "inside" Tony. When appellant was finished, appellant told Tony to "clean up." According to Tony, he was penetrated anally or made to suck appellant's penis approximately twice per week for the next six years. When asked why he did not tell anyone about the sexual abuse, Tony replied that appellant threatened to "make it worse" if he told and that he was afraid that appellant would hurt him or his mother. Tony stated that after they moved to Tennessee, he reached a point where he couldn't tolerate the abuse any longer and informed his counselor and then his mother.
Appellant testified in his own defense. He claimed that he never sexually abused Tony. Appellant maintained that he worked the "swing shift" the entire time he, Tony, April and Eric lived together and that he spent his hours off either fishing, hunting, helping someone with a chore, going to a bar or sleeping. Appellant also claimed that he was never alone in the house with Tony. He asserted that there were always other people around, in fact, he claimed, "There was always somebody living there." April had denied this claim. In addition, even though appellant's sister, who babysat for April and appellant, verified that there were several persons living in the house for about one month in 1992, she also stated that there were no other adults in the home, on most occasions, after that period. Appellant's sister-in-law alleged that there were other adults residing in appellant's home in 1992 and 1993.
After deliberations, the jury returned a verdict of guilty on Counts 1 through 5 (1992 through 1996) and a verdict of not guilty on Count 6 (1997) of the indictment.
In his Assignment of Error No. I, appellant claims that the state's failure to provide the specific dates of the alleged rapes deprived him of the opportunity to present an alibi. The purpose of an indictment is to compel the state to set forth all material facts constituting the essential elements of an offense in order to provide the defendant with adequate notice and an opportunity to defend. State v. Sellards (1985),17 Ohio St.3d 169, 170. Under R.C. 2907.02(A)(1)(b,) the precise time and date of an offense are not essential elements of rape. Accordingly, appellee's failure to provide specific times and dates for the charges of rape in the indictment is not, in and of itself, a basis for dismissal of the charges. Id. at 172. Moreover, and particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. _State v. Barnecut (1988), 44 Ohio App.3d 149, 151. Furthermore, although the state is required to supply specific dates and times regarding an alleged offense where it possesses such information, see Sellards, supra, syllabus, the inability to produce such specific information is without prejudice provided that failure to prove times and dates does not present a material detriment to the preparation of the defense. Id.
In the case before us, appellant fails to demonstrate how the lack of specificity of dates prejudices his defense. His defense was that he was never alone with Tony during the relevant five year period and that there were other adults in the household who could have committed the offenses. This defense was pursued through cross-examination of prosecution witnesses and through defense witness testimony. Moreover, considering the span of time over which the numerous rapes occurred, it would be almost impossible for appellee to obtain the information concerning specific dates. Accordingly appellant's Assignment of Error No. I is found not well-taken.
In his Assignment of Error No. II, appellant urges that he was denied a right to a fair trial and due process because the trial court allowed Dr. Gemmill to render an opinion on Tony's veracity as prohibited inState v. Boston (1989), 46 Ohio St.3d 108, syllabus.
After discussing the results of his physical examination of Tony, Dr. Gemmill spontaneously provided the following opinion at trial:
 "Well, with these findings, it certainly is my opinion that [Tony's] story is very acceptable and accurate. We have findings that are very consistent with the story that we're told of this five year history of sodomization."
Appellant failed to object to this opinion. Generally, an appellate court need not consider an error which was not objected to at the proceedings below. State v. Williams (1977), 51 Ohio
St.2d 112, paragraph one of the syllabus. However, plain error exists if substantial rights of the accused are so adversely affected that it undermines the fairness of the guilt determining process. State v.Edwards (1997), 123 Ohio App.3d 43, 47 (Citations omitted.). The Ohio Supreme Court held, in State v. Boston, 46 Ohio St.3d at 128, that opinion testimony as to the veracity of a child declarant "was egregious, prejudicial and constitutes reversible error." Considering this forceful statement by the state's high court, we have previously determined that testimony concerning the truthfulness of a child affects a substantial right of a defendant and can constitute plain error. State v. Edwards,123 Ohio App.3d at 47 (Citations omitted.).
In State v. Stowers (1998), 81 Ohio St.3d 260, 262-263, the Ohio Supreme Court explained that Boston:
 "* * * excludes expert testimony offering an opinion as to the truth of a child's statements (e.g., the child does or does not appear to be fantasizing or to have been programmed, or is or is not truthful in accusing a particular person)." It does not proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity."
As applied to the present case, Dr. Gemmill's opinion does not state that Tony was not fantasizing or was not programmed or is truthful in accusing appellant. Rather, read as a whole and in context, the opinion merely states that the doctor's physical findings are consistent with Tony's testimony, thereby merely providing assistance to the jury in assessing the child's veracity. Accordingly, the doctor's opinion does not rise to the level of plain error, and appellant's Assignment of Error No. II is found not well-taken.
Appellant's Assignment of Error No. III clams that the trial court erred in allowing Charney, the criminal investigator for SCCS, to testify that she became involved in this case after receiving a "referral [that] came in with allegations that Tony had been abused by Dale Metz." Appellant also contends that the trial court erred in failing to exclude, from Dr. Gemmill's testimony and report, Tony's statement identifying appellant as the perpetrator of the rapes. Appellant's trial counsel objected to the admission of these statements, arguing that each was inadmissible hearsay.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion, i.e., unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980),62 Ohio St.2d 151, 157.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless the evidence falls within one of the recognized exceptions. Evid.R. 802.
The statement made by Charney was not inadmissible hearsay because it was not made to prove the truth of the matter asserted, that is, the identification of appellant as the rapist. Instead, it was made to show how Charney became involved in the investigation of this case and to explain her subsequent actions during the investigation. Therefore, the trial court did not abuse its discretion in overruling appellant's objection to the admissibility of this statement.
In both his testimony and report, Dr. Gemmill stated that he conducted an examination of Tony to ascertain any physical signs of sexual abuse. The physician testified/reported that when he touched the child's anus with his finger and asked whether anyone else ever touched him there, Tony replied, "Yes, my little brother's father, Dale." When appellant objected, the court found that the statement was made for diagnosis and treatment. Unlike Charny's statement, this identification of appellant as the perpetrator of the sexual abuse addresses the truth of the matter asserted, and is therefore barred as inadmissible hearsay unless it falls within one of the hearsay exceptions. We conclude that the identification statements in Dr. Gemmill's testimony and report are admissible as an exception under Evid.R. 803(4).
Statements of a child identifying the perpetrator of sexual abuse are admissible into evidence if made for the purposes of Evid.R. 803(4).State v. Dever (1992), 64 Ohio St.3d 401, paragraph two of the syllabus. Evid.R. 803(4) excepts hearsay statements "made for purposes of medical diagnosis or treatment" that describe "medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Here, Dr. Gemmill explained that, due to the trauma suffered by children in cases of alleged sexual abuse, he conducts his physical examination of a child in a certain manner. He testified that it is customary for him to touch the child, either with his finger or a marker in a particular anatomical area and ask the child if anyone else ever touched him or her there. Tony's identification statement was made in this context and, as such, was part of his diagnosis and treatment.
Moreover, if error, the admission of these statements is harmless error beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18,24. Before Dr. Gemmill took the stand, the prosecution presented Tony as a witness. Tony described the sexual abuse in detail and identified appellant as the abuser; he was subjected to a thorough cross-examination. Further, appellee offered medical testimony, from Dr. Gemmill, that the physical changes in Tony's body were the product of sexual abuse and could not have been caused accidentally. Given the over-whelming evidence of guilt, it is clear beyond reasonable doubt that the admission of these hearsay statements did not prejudice the appellee. State v. Kidder (1987), 32 Ohio St.3d 279, 284. See, alsoState v. Tomlinson (1986), 33 Ohio App.3d 278, 281 (The admission of hearsay statements is harmless where the declarant is examined on the same matters as contained in the statements and where the admission is essentially cumulative.). For all of these reasons, appellant's Assignment of Error No. III is found not well-taken.
In his Assignment of Error No. IV, appellant argues that statements elicited by appellee in testimony of Investigator Charney and Tony's mother, April, were impermissible, implicit comments on appellant's right to remain silent.
Investigator Charney testified that, as part of her investigation of the allegation of sexual abuse, she contacted the Warren County Children Services in Tennessee so that they could conduct a "courtesy interview" of appellant. When they failed to respond, she later contacted the District Attorney and Sheriff's Department in Warren County. According to Charney, she never received a report or response as a result of either of these contacts. As for April, the only statement elicited from her was that she talked to appellant at the end of 1999 and "told him he needed to get ahold of the Prosecutor because he wanted to talk to him, and if he didn't that he would be indicted." Appellant did not object to any of this testimony.
Because appellant failed to bring the alleged error to the trial court's attention at a time when the error could have been avoided, he waived this error for the purposes of appeal. State v. Ferrette (1985),18 Ohio St.3d 106, 110, citing State v. Williams, 51 Ohio St.2d at paragraph one of the syllabus. Moreover, while we agree that, generally, a prosecutor is prohibited from cross-examining defendants about their prior silence where the silence occurred after arrest, see Doyle v. Ohio
(1976), 426 U.S. 610; State v. Combs (1991), 62 Ohio St.3d 278, 281;State v. Ospina (1992), 81 Ohio App.3d 644, 649-650, the record in this case presents no evidence of such comments. Neither of the statements made by these two witnesses related to appellant's post-arrest/post-Miranda silence. Consequently appellant's Assignment of Error No. IV is found not well-taken.
Assignment of Error No. V maintains that the trial judge demonstrated bias and prejudiced appellant's case by making an improper comment on the evidence and the testimony.
In his report and testimony, Dr. Gemmill obviously became confused as to when Tony first reported that he was being sexually abused. His report indicated that Tony was five when he told his counselor inTennessee of the abuse. However, the testimony of the remaining prosecution witnesses indicated that Tony and his family did not move to Tennessee until 1997, and that Tony disclosed the abuse for the first time the following year. On his recross-examination of Dr. Gemmill, appellant's trial counsel employed the discrepancy in the doctor's report to obtain an opinion that the abuse occurred only recently and/or that it was a "tragedy" that the abuse was not reported to the proper authorities sooner. On re-redirect examination, the prosecutor pointed out that the doctor's report noted that disclosure was not made until Tony lived in Tennessee. Dr. Gemmill then agreed that there was some confusion as to when the disclosure was made. Appellant's trial counsel then indicated that he again wanted to ask the doctor one question on this issue. The court first admonished counsel to limit his examination to one question and stated, "I think we are beating a dead horse here. I think it's pretty obvious what the facts are." Appellant urges that this statement is an impermissible statement as to the truth of disputed facts in this case and demonstrated bias toward appellant. We disagree.
R.C. 2945.03 provides that "the judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." The court's ability to control the proceedings is, however, counterbalanced by the need to remain detached and neutral and to satisfy the appearance of justice. _State v. Gunther
(1997), 125 Ohio App.3d 226, 236. Here, unlike _State v. Laing (Dec. 2, 1999), Cuyahoga App. No. 73927, unreported, the court did not display bias through a pervasive course of actions and comments throughout appellant's trial. Rather, the trial court simply made a single comment in order to expedite the proceedings below. Appellant's recross-examination had already achieved the goal of providing testimony that placed the time of the report of sexual abuse into conflict, and appellee had an opportunity to question the doctor in rebuttal. In short, the record reveals that the court remained neutral and detached during the course of appellant's trial. Therefore, Assignment of Error No. V is found not well-taken.
In his Assignment of Error No. VI, appellant contends that the trial court erred in failing to conduct a hearing on the issue of whether Tony was competent to testify. Appellant acknowledges that, pursuant to Evid.R. 601(A), "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." It is undisputed that Tony was thirteen years old at the time he testified; therefore, he was competent to be a witness. Nevertheless, appellant asserts that because the abuse occurred before the age of ten and due to Tony's "psychological issues," the trial court should have conducted a competency examination.
The Ohio Supreme Court addressed this question and determined:
 "* * * that under the plain meaning of Evid.R. 601(A), a child witness who is ten years of age or older at the time of trial, but who was under the age of ten at the time an incident in question occurred, is presumed competent to testify about the event. A trial judge, in the exercise of his or her discretion, may choose to conduct a voir dire examination of the child witness if the judge has reason to question the child's competency. The decision not to voir dire a child witness under such circumstances will be viewed under an abuse of discretion standard. In such cases, absent a compelling reason to act otherwise, the failure to conduct a voir dire examination of a child witness who is over the age of ten at trial will not constitute reversible error."
Age at the time the abuse commenced and the type of psychological problems experienced by Tony are not sufficiently compelling reasons requiring the court in this case to conduct a voir dire examination of this particular child witness. Accordingly, the trial court did not abuse its discretion in presuming that Tony was competent to testify. Accordingly appellant's Assignment of Error No. VI is found not well-taken.
We turn now to Assignment of Error No. X, which alleges that appellant's conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.
"The test for sufficiency of the evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the elements of the crime beyond a reasonable doubt." State v. Allen (1995), 73 Ohio St.3d 626, 630. In the case under consideration, we conclude that sufficient evidence was offered, through Tony's testimony, coupled with Dr. Gemmill's testimony as to his physical findings, to show, beyond a reasonable doubt that appellant engaged in sexual conduct, as defined in R.C. 2907.01(A), with a person less than thirteen years of age for the five year period encompassing 1992 through 1996.
In determining whether a conviction is against the manifest weight of the evidence, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Appellant makes no specific argument with regard to the manifest weight of the evidence, and we conclude that, even in viewing the evidence as the "thirteenth juror," Id., that a manifest miscarriage of justice did not occur in this case. Accordingly, appellant's Assignment of Error No. X is found not well-taken.
Appellant's Assignment of Error No. VII asserts that the trial court erred in classifying him as a sexual predator.
R.C. 2950.01(E) defines a "sexual predator" as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." Pursuant to R.C. 2950.01(D)(1), a violation of R.C. 2907.02
constitutes a sexually oriented offense. R.C. 2950.09(B)(2) sets forth the following non-exhaustive list of relevant factors that the trial court must consider in determining whether someone is a sexual predator:
"(a) The offender's age;
 "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g) Any mental illness or mental disability of the offender;
 "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
The court shall classify a sex offender as a sexual predator only if its conclusion is supported by clear and convincing evidence. R.C. 2950.09(B)(3); State v. Williams (2000), 88 Ohio St.3d 513,519.
In the present case, all of the evidence adduced during appellant's trial was incorporated into appellant's sentencing hearing. The court specifically enumerated factors that were relevant to a finding that appellant is a sexual predator in its judgment entry. These were that: (1) appellant was between the ages of twenty-one to twenty-five when he committed the rapes and that he was almost twenty-nine years old at the time of his trial; (2) the only criminal offenses on appellant's record were a misdemeanor offense of physical harm and a "substantial" traffic offense history; (3) the victim was between the ages of five and ten when the five counts of rape were committed; (4) the offenses involved one victim; (5) there was no evidence of alcohol or drugs used to impair the victim or prevent him from resisting; (6) appellant served some jail time for the misdemeanor and the traffic offenses; (7) there was no evidence of mental illnesses or disability of the part of appellant; (8) the twice weekly rape of a child between the ages of five and ten is a demonstrated pattern of abuse; and (9) the victim testified that appellant threatened both his mother and him if he told anyone about the rapes[1]. Of these factors, the age of appellant when he committed these offenses, the age of his victim, the demonstrated pattern of abuse over a long period of time and the fact that Tony felt that his mother and he would be hurt by appellant if he told were of special importance to the court's decision. Our review of the record discloses that these, as well as all of the other factors, are supported by clear and convincing evidence thereby mandating a finding that appellant is a sexual predator. Accordingly, appellant's Assignment of Error No. VII is found not well-taken.
Before we can address the issue in appellant's Assignment of Error No. VIII, we must first consider his Assignment of Error No. XI. In this eleventh assignment, appellant contends that the trial court erred in imposing five life sentences because no evidence was offered to show that appellant compelled Tony to submit by force or threat of force.
R.C. 2907.02(B), as effective both before and after July 1, 1996, provides/provided that the offender who engaged in sexual conduct with a child under thirteen "shall be imprisoned for life" in those instances where he or she purposely compelled the victim to submit by force or threat of force. This requisite language was included in each count of the indictment upon which appellant was found guilty and for which a life sentence was imposed.
In a case in which the element of force is sought to be proved and which involves a minor child and a defendant who was in a position of authority over the child at the time of the alleged offense, "force need not be overt and physically brutal, but can be subtle and psychological. As long as it can be shown that [a] victim's will was overcome by fear or duress, the [element of force] can be established." State v. Dye
(1998), 82 Ohio St.3d 323, 327, quoting State v. Eskridge (1988),38 Ohio St.3d 56, 58-59.
In the case before us, it is undisputed that appellant, April, Tony and, later, Eric lived as a family for approximately seven years. April testified that during that period appellant acted as a "father" to Tony and frequently was his caretaker. April, appellant and Tony revealed that appellant disciplined the boy. Moreover, appellant threatened Tony by stating that if he told anyone of the abuse, appellant would "make it worse." Tony was afraid that appellant might hurt his mother or himself. Thus, the evidence disclosed that appellant held a position of authority over Tony from the time he was five years old, a very young child, until such time that Tony revealed the repeated sexual abuse. Accordingly, the requisites of R.C. 2907.02(B) were met, and the trial court did not err in imposing a life sentence for each of the five guilty verdicts. Appellant's Assignment of Error No. XI is found not well-taken.
We now turn to appellant's Assignment of Error No. VIII, which asks this court to determine whether the trial court erred in retroactively applying Senate Bill 2 in sentencing him to three consecutive life sentences.
At the sentencing hearing, the trial court stated that the crimes were committed prior to the changes in Ohio sentencing statutes on "July 1, 1997." Therefore, the court declared that it was imposing sentence pursuant to prior law-not Senate Bill 2. Furthermore, we find that the trial court did not exceed its authority in imposing consecutive life sentences under law in effect at the time the offenses for which those sentences were imposed were committed. The consecutive sentences were imposed for the violations of R.C. 2907.02(A)(1) that occurred in 1992, 1993 and 1994. Thus, the sentencing guidelines in effect prior to July 1, 1996, not July 1, 1997, are applicable to this case. See State v.Rush (1998), 83 Ohio St.3d 53, paragraph two of the syllabus (The provisions of Senate Bill 2 can be applied only to crimes committed on or after its effective date.).
Pursuant to previous law, an appellate court would generally not reverse a trial court's exercise of discretion in sentencing when the sentence was authorized by statute and was within the statutory limits.State v. Hill (1994), 70 Ohio St.3d 25, 30 (Citations omitted.) R.C.2929.41(B), as effective at the time of the offenses in this case, allowed the imposition of consecutive terms of incarceration in several situations, including "when the trial court specifies" that they could be served consecutively. R.C. 2929.41(B)(1). Because the trial court had this broad authority to specify that the appellant's life sentences could be served consecutively under the statute, we find no error in the imposition of the consecutive sentences. Moreover, as to the life sentences themselves, they are mandatory under either version of R.C.2907.02(B) and, as a result, not subject to the sentencing guidelines in effect either before or after July 1, 1996. For these reasons, appellant's Assignment of Error No. VIII is found not well-taken.
In Assignment of Error No. IX, appellant claims ineffective assistance of trial counsel. To prevail, he must show (1) that counsel performed so deficiently that he was not functioning as the "counsel" guaranteed by the Sixth Amendment of the Constitution of the United States and (2) that counsel's errors were prejudicial. Strickland v. Washington (1984),466 U.S. 668, 687. To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Appellant contends that trial counsel's performance was deficient in the following ways: (1) failing to move to dismiss several counts of the indictment based upon a violation of the statute of limitations; (2) failing to object to an expert witness who vouched for the credibility of the sexual assault allegations; (3) failing to object to the admission of Dr. Gemmill's medical report; (4) failing to object to the application of Senate Bill 2 sentencing concerning charges that predate Senate Bill 2; (5) failing to object to consecutive sentences; and (6) failing to object concerning appellant's right to remain silent. Our disposition of previous assignments of error leads to the inevitable conclusion that trial counsel did not fail in any duty to his client with regard to Item Nos. 2, 3, 4, 5 and 6. As to Item No. 1, appellant asserts that the report/testimony of Dr. Gemmill suggested that Tony first disclosed the sexual abuse to a counselor in 1992. Appellant was not indicted until August 24, 1999. Consequently, appellant claims that Counts 1 (1992), 2 (1993) and 3 (1994) of the indictment were barred by the six year statute of limitations set forth in R.C. 2901.13(A)(1), as effective prior to July 1, 1996. Thus, appellant reasons that trial counsel was ineffective for failing to file a motion to dismiss these counts.
Former R.C. 2901.13(A)(1) barred the prosecution of all felonies, except aggravated murder and murder, unless they were commenced within six years of the commission of the offense charged. R.C. 2901.13(F) provided, however, that the statute of limitations did not run "during any time that the corpus delicti remains undiscovered." Pursuant to Statev. Hensley (1991), 59 Ohio St.3d 136, 139-140, the corpus delicti of a crime involving the sexual abuse of a child is discovered when a responsible adult, as listed in R.C. 2151.421, who has a legal duty to report the abuse has knowledge of the act and the criminal nature of the act. A responsible adult includes, among others, a licensed psychologist, a licensed school psychologist, and a licensed professional counselor who is acting in his or her official or professional capacity. R.C. 2151.421(A).
In the present case, the testimony of Tony and his mother revealed that Tony never engaged in counseling until 1997, after the family moved to Tennessee. According to these two witnesses, the rapes were not disclosed to a counselor, a person who was required to report the abuse under R.C. 2151.421, until August 1998. In his testimony, appellant himself also indicated that disclosure did not occur until the family lived in Tennessee.
Appellant bases his claim of ineffective assistance of counsel on the following sentences, as contained in Dr. Gemmill's report: "Tony apparently told his counselor when he was five years of age during which time he was very symptomatic. The sexual abuse was disclosed at that time in Tennessee." Later, the doctor opined that "[i]t is somewhat uncanny that despite a disclosure at that age, that no intervention had been taken." The doctor was cross-examined on these statements. He stated that he did not take Tony's history. A nursing student performed that function, and Dr. Gemmill then incorporated that history into his medical report. Appellant's trial counsel also extensively questioned Dr. Gemmill about persons who were mandated under R.C. 2151.421 to report alleged abuse of a child. In the course of this questioning, counsel elicited testimony from the doctor as to how unlikely it would be for a person who was legally required to report such abuse not to do so. In addition, on re-redirect, Dr. Gemmill admitted confusion as to when disclosure was first made and to whom it was made, but agreed that it was made in Tennessee.
Based on the evidence adduced at trial concerning the date of the first disclosure of the sexual abuse and Dr. Gemmill's testimony, we must conclude that the corpus delicti of the charged offenses were not discovered until August 1998. Therefore, Counts 1, 2 and 3 of the indictment were not precluded by the statute of limitations. Consequently, any failure on the part of trial counsel to raise the defense of the statute of limitations was not prejudicial to appellant's case. Thus, appellant's Assignment of Error No. IX is found not well-taken.
Upon consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ______________________________ Peter M. Handwork, J.
 Melvin L. Resnick, J., James R. Sherck, J., CONCUR.
[1] Appellant asserts that the lower court erred because no evidence supports a finding that appellant expressly threatened to hurt Tony and his mother. However, Tony testified that appellant threatened to "make it worse" if he told and that he, Tony, believed that appellant would hurt them if he said anything about the rapes to anyone. Thus, although appellant is correct in the sense that there were no direct threats, appellant did display cruelty in threatening to "make it worse" and Tony did act under duress because he believed there was a threat of harm to his mother and himself if he did not submit to appellant.